Filed 5/27/25

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082912 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD284726) |
| GREGORY JEROME SHIVELY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Daniel B. Goldstein, Judge. Reversing in part, otherwise affirming, and remanding with directions.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Gregory Jerome Shively of 57 counts of conspiracy, burglary, attempted burglary, and robbery and found true gang allegations as to some but not all the counts. The trial court sentenced Shively to an

aggregate prison term of 45 years and eight months. Appointed appellate counsel filed a brief under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*) indicating he found no arguable issues for reversal on appeal. We offered Shively the opportunity to file his own brief, but he did not do so. After reviewing the entire record as required by *Wende* and *Anders*, we requested supplemental briefing on two issues. Having reviewed the submissions, we reverse the true findings on the gang allegations for insufficient evidence that the predicate burglaries provided a common, nonreputational benefit to the gang. In all other respects we affirm. We remand this matter to the trial court for full resentencing consistent with this opinion.

## I.

### A.

From January 2017 through February 2018, Shively was the mastermind behind a residential burglary ring that targeted 31 different residences in San Diego County.

During the first phase of the trial, which commenced in June 2023, the jury convicted Shively of all 57 counts with which he was charged: 25 counts of conspiracy (Pen. Code, § 182, subd. (a)(1); counts 1, 3, 6, 8, 10, 12, 14, 16, 18, 20, 22, 25, 28, 31, 33, 36, 38, 40, 42, 44, 46, 48, 50, 52 & 55), 29 counts of burglary (§ 459; counts 2, 4, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 24, 26, 27, 29, 30, 32, 37, 39, 41, 43, 45, 47, 49, 51, 54, 56 & 57), two counts of attempted burglary (§§ 459 & 664; counts 34 & 35), and one count of robbery (§ 211; count 53). For each of the burglaries or attempted burglaries, the jury additionally found true an allegation that the dwelling was inhabited. (§ 460, subd. (a); counts 2, 4-5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 24, 26, 27, 29, 30, 32, 34, 35, 37, 39, 41, 43, 45, 47, 49, 51, 54, 56 & 57.) The jury also found true

that six of the burglaries were committed when someone other than a coconspirator was present. (§ 667.5, subd. (c)(21); counts 2, 15, 41, 45, 51 & 54.)

B.

As to all 57 counts, it was further alleged Shively committed the offense for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further, and assist in criminal conduct by gang members under section 186.22, subdivision (b)(1). The second phase of trial centered on these allegations.

The jury found the gang allegations true beyond a reasonable doubt as to counts 3 through 11 and 28 through 35 (the offenses committed with coconspirator Jalen Johnson), 12 through 27 (the offenses committed with coconspirators Johnson and Aerick Splane), and 46 through 57 (the offenses committed with coconspirator Kenneth Ford). The jury found not true the gang allegations as to counts 1, 2, and 36 through 45, for which Shively's coconspirators were unknown.

C.

Shively waived his right to a jury trial on the aggravating circumstances and his prior offenses. Following a bench trial, the court found the serious felony prior (§§ 667, subd. (a)(1) & 1192.7, subd. (c)) and strike prior (§ 667, subds. (b)-(i)) to have been proven beyond a reasonable doubt. The court also found true beyond a reasonable doubt several aggravating factors in rule 4.421 of the California Rules of Court.

At the August 2023 sentencing hearing, the court concluded "probation is not an option." It made the robbery (count 53) the principal term and imposed the low term of two years. The court stayed a low-term sentence on the related burglary count (count 54). The court stayed two-year terms on

3

each of the conspiracy counts (counts 1, 3, 6, 8, 10, 12, 14, 16, 18, 20, 22, 25, 28, 31, 33, 36, 38, 40, 42, 44, 46, 48, 50, 52 & 55), imposed consecutive terms of 16 months—one-third the midterm—on each of the remaining burglary counts (counts 2, 4-5, 7, 9, 11, 13, 15, 17, 19, 21, 23-24, 26-27, 29-30, 32, 37, 39, 41, 43, 45, 47, 49, 51 & 56-57), and imposed consecutive terms of eight months on the attempted burglary counts (counts 34-35).

The court granted Shively's motion to strike his strike prior and initially decided to strike the serious felony prior as well. At first finding it "appropriate to use one of the gang allegations," the court struck the punishment on all the gang allegations found true except the one associated with the burglary in count 4. But when counsel pointed out that the gang allegation imposed on count 4 would result in "an unlawful sentence," as its term would exceed that of the principal term of count 53, the court responded by striking punishment on *all* the gang allegation true findings and instead imposing a prison term on the serious felony prior.

D.

Shively's counsel filed a *Wende* brief setting forth a statement of the case and facts, identifying no grounds for reversal of the judgment, and asking this court to independently review the record for error. To assist the court in its review under *Anders, supra*, 386 U.S. at pp. 744-745, counsel stated he considered the following issues in evaluating the potential merits of this appeal:

1. Did the trial court prejudicially err in granting the People's motion to exclude allegedly self-serving statements as hearsay?

2. Did the trial court prejudicially err in granting the People's motion to admit gang evidence?

3. Did the trial court prejudicially err in granting the People's motion to admit evidence of a conspiracy?

4. Did the trial court prejudicially err in denying Shively's motion to exclude evidence of 911 calls from the alleged victims?

5. Did the trial court prejudicially err in denying Shively's motion to disclose the identity of a confidential informant?

6. Did the trial court prejudicially err in denying Shively's motion to exclude statements contained in his jail calls and text messages?

7. Did the trial court prejudicially err by admitting an exhibit describing a call pattern for certain cell phone calls, which was generated by a witness?

8. Was the evidence sufficient to support the jury's finding as to the gang enhancement under Penal Code section 186.22?

Based on our independent review of the record for error as *Wende* requires, we requested supplemental briefing on two issues:

1. Whether substantial evidence supports the jury's implicit finding that the predicate and charged offenses provided a non-reputational common benefit to the East Coast Crips as required to support the jury's true findings on the gang allegations attached to counts 3-35 and 46-57.

2. Whether the abstract of judgment must be amended to: (a) reflect a theft fine of $41 as orally imposed rather than $417; (b) with regard to the gang allegations, omit count 36 from the allegations found true and change one of the "count 56"'s to "count 55"; and (c) designate count 53 as a low-term sentence.

5

II.

In his supplemental brief, Shively contends there is insufficient evidence the predicate or charged offenses benefited his gang, the East Coast Crips, in a more-than-reputational way. On this record, we agree there was insufficient evidence of the *predicate* offenses to support the gang allegations. Given this conclusion, we need not address Shively's argument regarding the *charged* offenses.

1.

Effective January 1, 2022, to prove the gang allegations true beyond a reasonable doubt, the prosecution had to show (1) Shively committed the burglaries, attempted burglaries, robbery, and conspiracies "'for the benefit of, at the direction of, or in association with a criminal street gang'" (2) "'with the specific intent to promote, further, or assist in criminal conduct by gang members.'" (*People v. Hin* (2025) 17 Cal.5th 401, 460 (*Hin*); Pen. Code, § 186.22, subd. (b)(1).)

A "criminal street gang" is (1) "an ongoing, organized association or group of three or more persons, whether formal or informal," (2) "having as one of its primary activities the commission of one or more of the [enumerated] criminal acts," (3) "having a common name or common identifying sign or symbol," and (4) "whose members collectively engage in, or have engaged in, a pattern of criminal gang activity." (§ 186.22, subd. (f).)

A "pattern of criminal gang activity" means (1) "the commission of . . . or conviction of, two or more" enumerated criminal acts, (2) "provided at least one of these offenses occurred after [September 26, 1988], and the last of those offenses occurred within three years of the prior offense and within three years of the date the current offense is alleged to have been committed," (3) "the offenses were committed on separate occasions by two or more

6

members," (4) "the offenses commonly benefited a criminal street gang," and (5) "the common benefit from the offenses is more than reputational." (§ 186.22, subd. (e)(1).) "Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential[,] current or previous witness or informant." (§ 186.22, subd. (g).)

The enumerated criminal acts that can make up a pattern of criminal activity include burglary. (§ 186.22, subd. (e)(1)(K).) The charged offenses cannot be used. (§ 186.22, subd. (e)(2).) The acts making up the pattern of criminal activity are often referred to as predicate offenses. (See, e.g., *Hin*, *supra*, 17 Cal.5th at p. 463.)

The Legislature amended section 186.22 in part because the California Street Terrorism Enforcement and Prevention Act (STEP Act) "was originally enacted to target crimes committed by violent, organized criminal street gangs" and its "[p]roponents claimed the prosecution would be unable to prove an offense was committed for the benefit of, or in association with, a gang 'except in the most egregious cases where a pattern of criminal gang activity was clearly shown,'" yet "[t]he STEP Act has been continuously expanded through legislative amendments and court rulings," which have made true findings on gang allegations "ubiquitous." (Stats. 2021, ch. 699, § 2(g), citing Pen. Code, § 186.21; Sen. Com. on Judiciary, Bill Analysis of Assembly Bill 1555 (June 1987).)

2.

The prosecution called the investigating detective as its gang expert. The expert had investigated roughly 300 gang-related burglaries over his career.

7

The expert testified the East Coast Crips gang has more than 1,000 members in Los Angeles and Riverside Counties. Their "most common hand sign" is "using their hand to form the letter 'E.'" The expert testified residential burglary "is *the* primary activity of" the gang because (1) it "is not an easy crime to solve" and (2) "it is financially lucrative." (Italics added.)

The expert testified about five predicate offenses he had investigated. The first was Los Angeles County case number BA466932, in which three East Coast Crips members pled guilty to a September 2016 residential burglary and admitted gang allegations.

The second predicate offense was Los Angeles County case number YA095781, in which three East Coast Crips members pled guilty to a March 2017 burglary and admitted gang allegations. In executing a search warrant of one of the defendant's houses following their arrest, law enforcement recovered evidence of prior burglaries, including a gun stolen from a residence and used in a subsequent burglary.

The third predicate offense was Ventura County case number 2015025049, in which two East Coast Crips members and one associate pled guilty to an August 2015 residential burglary and admitted a gang allegation.

The fourth predicate offense was Los Angeles County case number YA095541, in which two members or associates of the East Coast Crips pled guilty to or were found guilty by a jury of a February 2014 residential burglary.

The fifth predicate offense was Los Angeles County case number YA096670, in which four East Coast Crips members pled guilty to an August 2016 residential burglary.

At the end of his testimony about the predicate offenses, the gang expert reaffirmed residential burglary was a primary activity of the East Coast Crips.

The expert testified generally that "[t]he most common way gang members get guns, specifically, East Coast Crips, is from residential burglaries." He said, "those guns are then in turn brought back to wherever the gang is located or the person resides for personal protection, protection for the gang, fellow members, or also disposed of for money. Sold to associates of those particular gang members for money."

The gang expert also testified that in this particular case he found no evidence "that if one [gang member] is arrested, the others would be taxed in order to help pay for a lawyer," although "in prior East Coast Crip[s] investigations" he was involved in he had found evidence "not that there was a tax, but there would be proceeds shared amongst the East Coast Crip[s] gang members to assist in paying lawyer fees or bail money."

3.

We agree with Shively that the prosecution failed to present sufficient evidence the predicate offenses provided a common benefit to the East Coast Crips that was more than reputational.

Given the relative newness of amended section 186.22 and the pace of the judicial review process, the published authority thus far has concerned cases in which the amendments to section 186.22 are applied retroactively to judgments not yet final. In those cases, where the jury was not instructed on the new law, the appellate court must "'determine "whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element."'" (*People v. Cooper* (2023) 14 Cal.5th 735, 742-743 (*Cooper*), quoting *People v. Mil* (2012) 53 Cal.4th 400, 417.)

9

The sufficiency of the evidence review applicable in those cases is different from that which applies here, where the jury was instructed on the amended version of section 186.22. We instead "review 'the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Collins* (2025) 17 Cal.5th 293, 307 (*Collins*), quoting *People v. Johnson* (1980) 26 Cal.3d 557, 578.) We do not reweigh the evidence, assess witness credibility, or choose between competing inferences. (*People v. Stewart* (2000) 77 Cal.App.4th 785, 790.) Still, we must consider the weight of the evidence "before deferring to the conclusions drawn from the evidence by the trier of fact.'" (*Collins*, at p. 307.) In doing so, we ""can give credit only to 'substantial['] evidence, i.e., evidence that reasonably inspires confidence.""" (*Id.* at p. 307, quoting *People v. Kunkin* (1973) 9 Cal.3d 245, 250.) "'Mere conjecture, surmise, or suspicion is not the equivalent of reasonable inference and does not constitute proof.'" (*Id.* at pp. 307-308, quoting *People v. Anderson* (1968) 70 Cal.2d 15, 24.)

While distinguishable given their different postures, the recent California Supreme Court cases grappling with this issue provide some helpful insights into what amended section 186.22 requires to evidence a nonreputational common benefit arising from predicate offenses.

For instance, in *Cooper*, the defendant was convicted of murder, and the jury found true a gang enhancement under former section 186.22. (*Cooper*, *supra*, 14 Cal.5th at p. 740.) The predicate offenses were a robbery and the sale of narcotics. (*Id.* at pp. 740-741.) The gang expert testified both these offenses were among the gang's primary activities but did not testify how they benefited the gang. (*Id.* at p. 741.) On appeal, the People argued

10

"that crimes that have an inherent financial benefit and that are identified as the gang's primary activities qualify as a common benefit to the gang that is 'more than reputational.'" (*Id.* at p. 743.) The Supreme Court disagreed, explaining that "robbery and narcotics sales 'may of course be committed by gang members only for personal gain (which, relatedly, may benefit the gang only reputationally).'" (*Ibid.*) Thus, "the question of whether an offense is within the gang's primary activities is distinct from the question of whether a particular offense has 'commonly benefited a criminal street gang.' [Citation.] A jury determination regarding the gang's primary activities merely constitutes a conclusion about the types of activities in which a gang typically engages, whereas *the question about a common benefit asks about how the specific predicate offense actually benefited the gang.*" (*Ibid.*, italics added.)

Similarly, in *Hin*, which relied on *Cooper*, two of the predicate offenses were the sale of narcotics and robbery. (*Hin*, *supra*, 17 Cal.5th at p. 462.) The gang expert testified "that drug sales and burglary 'generate[ ] revenue' and thereby 'support the gang.'" (*Ibid.*) But the Supreme Court noted the gang expert "did not offer any testimony as to whether the specific alleged predicate offenses of [one gang member]'s drug sale or [the other gang member]'s burglary benefited [the gang] as a whole, and the record is otherwise silent as to the circumstances of those two predicate offenses. In sum, the evidence does not show that either crime was committed for the benefit of the gang rather than for personal gain." (*Id.* at p. 463.)

Like in *Cooper* and *Hin*, the prosecution here offered inadequate evidence that at least two predicate offenses commonly benefited the gang in a way that was more than reputational. Similar to *Hin*, the gang expert here testified burglary is the East Coast Crips' primary activity because it is

11

"financially lucrative."  But for none of the five predicate offenses did the gang expert provide any testimony or other evidence the burglaries *in fact* financially benefited the gang rather than the individual gang members who committed the burglaries.  While the gang expert testified he had found evidence in *other* investigations of the sharing of proceeds among gang members to pay for lawyers or bail, he did not testify that was so in the five predicate burglaries out of the more than 300 he had investigated.  Even under our deferential standard of review, this limited and conclusory evidence does not inspire sufficient confidence the jury's true findings were premised on anything more substantial than conjecture.  (*Collins, supra,* 17 Cal.5th at pp. 307-308.)

Even accepting—but not deciding—for purposes of this opinion the People's argument that the burglary of Los Angeles County case number YA095781 provided a common and nonreputational benefit to the East Coast Crips by procuring a firearm for the gang, one predicate offense alone is insufficient to establish a pattern of criminal activity.  (*Hin, supra,* 17 Cal.5th at p. 463.)  Because the prosecution failed to prove two or more predicate offenses benefited the gang in a more-than-reputational way, it failed to establish any "criminal street gang" existed for purposes of the alleged gang enhancements.  (*Salazar v. Superior Court* (2000) 83 Cal.App.4th 840, 846 ["The existence of a criminal street gang is unquestionably an element of the street gang enhancement."].)  We therefore reverse the true findings on the gang allegations as to counts 3 through 35 and 46 through 57.

Shively simply asks this court to reverse the true findings and correct the abstract of judgment, but we conclude a remand for full resentencing is appropriate here.  Although the court struck punishment for all the gang

allegations, it reinstated, seemingly in exchange for one of the gang allegations, the serious felony prior it had otherwise intended to strike. We therefore cannot be confident Shively's sentence would have remained the same had the jury found the gang allegations not true.

4.

Although both parties concede the abstract of judgment contains the errors identified by this court in its request for supplemental briefing, our reversal of the gang allegations and remand for resentencing render these errors moot. (*People v. Ochoa* (2020) 53 Cal.App.5th 841, 854, fn. 10.)

We reviewed the entire record as required by *Wende* and *Anders*. Other than the two issues on which we requested supplemental briefing, we have not discovered any arguable issues for reversal on appeal. Competent counsel has represented Shively on this appeal.

III.

We reverse the true findings on the gang allegations for counts 3 through 35 and 46 through 57. We otherwise affirm the judgment. We remand this matter to the superior court for full resentencing consistent with this opinion.

CASTILLO, J.

WE CONCUR:


DATO, Acting P. J.


KELETY, J.

13